FILED
2019 Feb-05 PM 03:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| PAULA FULLERTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 4:17-cv-01592-LSC |
| | ) |
| NANCY BERRYHILL, | ) |
| Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION**

**I.   Introduction**

The plaintiff, Paula S. Fullerton, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB"). Ms. Fullerton timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Fullerton was 51 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education, as well two years of college completed. (Tr. at 89, 102, 117-22, 363.) Her past work experiences include

1

employment as a real estate agent and courier/interior decorator. (*Id.*) Ms. Fullerton claims that she became disabled on January 1, 2014, due to diabetes, staph infection, anxiety, depression, back problems, blood clots, and gout. (Tr. at 362).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's

impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Ms. Fullerton meets the insured status requirements of the Social Security Act through the date of her decision. (Tr. at 94.) She further determined that Ms. Fullerton has not engaged in SGA since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's degenerative disc disease, diabetes mellitus, generalized arthritis, polyneuropathy, generalized anxiety disorder, panic disorder with agoraphobia, bipolar disorder, and depression are considered "severe" based on the requirements set forth in the regulations. (Tr. at 95.) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 95-96.) The ALJ determined

that Ms. Fullerton has the following RFC: to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) in that she can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit six of eight hours in a workday, and stand or walk six of eight hours in a work day; she is further limited in that she can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, balance, stoop, kneel, and crawl; she can frequently reach overhead; she must avoid all exposure to workplace hazards, such as dangerous machinery and unprotected heights; and she can understand, remember, and carry out simple instructions, maintain attention and concentration for two-hour periods at a time, adapt to infrequent and routine workplace changes and simple, work-related decisions, and have occasional interaction with the general public and coworkers. (Tr. at 97-98.)

Next, the ALJ obtained the testimony of a Vocational Expert ("VE") and determined at steps four and five of the sequential evaluation process that Plaintiff was unable to perform her past relevant work but could make an adjustment to other jobs that exist in significant numbers in the national economy, such as courier, merchandise price marker, routing clerk, and label marker. (Tr. at 102-03). The ALJ concluded her findings by stating that Plaintiff has not been under a

"disability," as defined in the Social Security Act, from the alleged onset date through the date of the decision. (Tr. at 103.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*,

793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Fullerton argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ erred in finding her not entirely credible and (2) when the additional evidence that she submitted to the Appeals Council is considered, she should have been found disabled.

### A. Credibility Determination

When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and

either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 16-3p; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929 (c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225-26. In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

    Here, Plaintiff testified at her hearing that she had a hard time getting out of bed in the morning to do anything four days out of seven due to her back pain. (Tr. at 126.) However, she also said that her back pain medicine manages the pain "real, really well." (Tr. at 125.) She said that her neuropathy causes her foot pain to be "like lightning bolts shooting out of [her] feet." (Tr. at 124). She further said that

sometimes she cannot walk on her feet due to the neuropathy. (Tr. at 130). She said that she can only sit for about ten minutes before she has to adjust for the pain in her feet. (Tr. at 131). She also said that her mental impairments were her primary impediments to working full time. (Tr. at 130.) With further regard to her mental impairments, Plaintiff testified she began seeing a psychiatrist in late 2014 but was prescribed medication through her primary care physician for many years prior to 2014. (Tr. at 99, 118-120). She further described symptoms such as anxiety and inability to focus. (Tr. at 99, 118.)

As explained below, substantial evidence supports the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of her alleged pain and other symptoms were not entirely consistent with the medical evidence and other evidence in the record, for the reasons the ALJ explained in the decision. The ALJ first acknowledged that, with regard to Plaintiff's degenerative disc disease and generalized arthritis, the objective evidence of record showed that Plaintiff had been involved in pain management since at least 2011. (Tr. at 99, 437-38). An x-ray of Plaintiff's cervical spine in May 2011 indeed showed degenerative changes in the mid-cervical spine. (Tr. at 99, 437-38). The ALJ noted that Plaintiff had been treated on a regular basis for pain management since at least 2012, where she had been diagnosed with spondylosis,

9

musculoskeletal pain, chronic pain, generalized arthritis, and muscle spasms. (Tr. at 99, 513-614; 757-67, 806-07). Plaintiff consistently reported her pain at about a five out of ten on the pain scale and complained of back pain as well as shoulder pain. (Tr. at 99, 513-614; 757-67, 806-07). The ALJ also took note of the fact that Plaintiff also has consistently reported to her physicians that her medications worked well without side effects, and that she was pleased with her pain control, as she could perform her activities of daily living without much difficulty. (Tr. at 99, 513-614; 757-57, 806-07). Plaintiff consistently had a normal gait with normal range of motion and strength in all extremities. (Tr. at 99, 513-614, 757-67, 806-07).

The ALJ specifically noted that Plaintiff testified at the hearing that, despite her complaints of disabling pain that allegedly kept her in bed four days out of the week, her pain management physician has only had to change her pain medication one time in four years. (Tr. at 99, 125). Plaintiff singles out this notation by the ALJ as evidence that the ALJ's credibility determination was flawed. However, the ALJ was merely citing Plaintiff's own hearing testimony, while in the process of considering the effectiveness of Plaintiff's medication in treating her symptoms, a factor that the ALJ properly considered pursuant to the regulations. (Tr. at 99-100, 125). *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b). In sum, despite Plaintiff's alleged severe pain, Plaintiff was still consistently reporting to her physician that

her pain was controlled and that she was capable of performing her daily chores and activities of daily living without problems. (Tr. at 99, 757-67, 806-07).

With respect to Plaintiff's diabetes mellitus, the ALJ noted that the treating records showed that Plaintiff was diagnosed with diabetes mellitus in approximately 2008 and had sought treatment with an endocrinologist. (Tr. at 99, 491-512). Initially, Plaintiff had some difficulty in controlling her diabetes mellitus, but since approximately 2009, the treating records showed that Plaintiff has had good control of her diabetes. (*Id.*) In 2014, Plaintiff's endocrinologist took Plaintiff off all medication as her diabetes was so well controlled, although Plaintiff had to return to medication in 2015, when her A1C levels increased. (Tr. at 99, 778-98).

Next, the ALJ discussed Plaintiff's polyneuropathy, noting that the treating records showed Plaintiff began complaining of a burning sensation in her legs in May 2014. (Tr. at 99, 751- 56). Nerve conduction studies were indeed consistent with bilateral motor/sensory polyneuropathy with a super-imposed bilateral peroneal neuropathy. (*Id.*) Plaintiff's primary care physician began prescribing Gabapentin to treat her neuropathy symptoms, but Plaintiff testified at the hearing the Gabapentin was not as effective as it had been initially. (Tr. at 99). However, Plaintiff's treating records did not show that she reported the purported ineffectiveness of the medication to her primary care physician. (Tr. at 99, 751-56).

The ALJ also discussed Plaintiff's alleged mental impairments of generalized anxiety disorder, depression, bipolar disorder, and panic disorder with agoraphobia. (Tr. at 99). As noted by the ALJ, in late 2014, Plaintiff was referred to Dr. M. Elizabeth Lachman. (Tr. at 99, 772-76). Dr. Lachman's treating records showed that Plaintiff's symptoms were managed by her medications for the most part. (Tr. at 99, 808-19). In October 2015, Plaintiff submitted to a psychological evaluation by Dr. Lachman, performed in connection with Plaintiff's application for disability benefits. (Tr. at 99, 772-76). Dr. Lachman noted Plaintiff was seen every one to two months and that her periods of normal functioning were less frequent and her periods of severe depression were increasing. (Tr. at 99-100, 772-76). Dr. Lachman opined Plaintiff was at times unable to concentrate, had some short-term and long-term memory deficits, and was extremely anxious. (Tr. at 100, 772-76). Dr. Lachman also opined Plaintiff would be progressively unsafe in the workplace, unable to perform routine tasks, and unable to work with colleagues. (Tr. at 100, 772-76). Despite this evaluation, Dr. Lachman's more recent treating notes showed Plaintiff was doing better and was able to take a vacation to Gatlinburg with her boyfriend without much difficulty. (Tr. at 100, 808-19). In January 2016, Dr. Lachman noted that her opinion was the same as in October 2015, despite her note showing improvement in December 2015. (Tr. at 100, 800-05, 808-19). The ALJ

considered Dr. Lachman's opinion but gave it little weight for several articulated reasons. (Tr. at 103.) One of these reasons was that although Dr. Lachman found Plaintiff had marked and sometimes extreme limitations in all areas related to occupational functioning, her treating notes did not contain any information, facts, or observations that would support such extreme and marked findings. (Tr. at 101, 772-76, 800-05, 808-19). Further, during the time that Dr. Lachman was treating Plaintiff, Plaintiff was working part-time performing such jobs duties that included traveling to unfamiliar places by herself to deliver paperwork and traveling unassisted to make purchases from various merchants, all duties that required Plaintiff to function independently and to interact with the public. (Tr. at 101, 117-33). Plaintiff does not challenge the weight the ALJ gave to Dr. Lachman's opinion or the opinion of any other medical source, and thus any such argument is waived. *See, e.g., Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (holding claimant waived arguments by not expressly challenging ALJ's findings).

The ALJ also discussed the psychological evaluation performed by Dr. Christopher Randolph in July 2016 in connection with Plaintiff's application for disability benefits. (Tr. at 100, 821-27). Plaintiff reported she worked part-time for her father's company and that she tried to schedule activities for at least four hours a day. (*Id.*) Dr. Randolph noted Plaintiff's mood and affect were tense and labile

with episodes of crying, but her orientation was intact and her memory fair. (*Id.*) Dr. Randolph diagnosed Plaintiff with bipolar disorder and panic disorder with agoraphobia. (*Id.*) Dr. Randolph concluded that Plaintiff did not show any impairment in reality testing or psychiatric symptoms that would warrant a psychiatric disability. (*Id.*) The ALJ gave Dr. Randolph's opinion great weight, as his opinion was consistent with Plaintiff's work record and with Plaintiff's testimony regarding her job duties after the alleged onset date, and Plaintiff does not challenge that finding on appeal. (Tr. at 101).

The ALJ also specifically noted that although Plaintiff took several medications for her mental impairments and for her alleged chronic pain, she had consistently reported to her physicians that she had no side effects from her pain medication or from her antidepressant medication. (Tr. at 100, 516-614, 760-67, 800-05, 806-07). Plaintiff did not complain of any side effects from her medication at the hearing (Tr. 100, 117-33).

The ALJ further considered that Plaintiff had a broad list of activities of daily living. (Tr. at 100). Plaintiff was independent in personal care, could drive a car, could fix simple meals, did household chores such as cleaning and laundry, and went grocery shopping at least once a week. (Tr. at 100, 390-97, 117-33). Plaintiff spent her time watching television and reading and socialized with her boyfriend

regularly. (Tr. at 100, 374-89, 390-97). Plaintiff worked part-time until July 2016, where she had duties that included driving alone to neighboring cities to deliver paperwork, shopping in stores alone, and purchasing items for interior design. (Tr. at 100, 117-22).

Based on the foregoing evidence considered by the ALJ, Plaintiff has not demonstrated that the ALJ's credibility finding should be overturned by this Court.

### B. Additional Evidence Submitted to Appeals Council

With few exceptions, a social security disability claimant is entitled to present new evidence at each stage of the administrative process. The Social Security Appeals Council must consider new, material and chronologically relevant evidence and must review the case if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. *Ingram v. Comm'r*, 496 F.3d 1253, 1258 (11th Cir. 2007); *see also* 20 C.F.R. § 416.970(a)(5) (the Appeals Council will review a case when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision"). The Appeals Council is not required "to provide a detailed discussion of a claimant's new evidence when denying a request for review." *Mitchell v. Comm'r*, 771 F.3d 780, 784 (11th Cir. 2014). When reviewing

the Commissioner's decision to deny Social Security benefits, "[A] federal district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council." *Ingram*, 496 F.3d at 1258. Specifically, when the Appeals Council denies review of newly submitted evidence, a reviewing court must determine "whether the new evidence renders the denial of benefits," and ultimately the ALJ's decision, erroneous and unsupported by substantial evidence. *Id.* at 1261-63.

In this case, the newly-submitted evidence included treatment records from Tennessee Valley Pain Consultants, Plaintiff's pain management facility, from which Plaintiff had already submitted other records that the ALJ considered. (Tr. at 16-88). This evidence that Plaintiff submitted to the Appeals Council was not material, as required by 20 C.F.R. § 416.970(a)(5). Evidence is material when, "if accepted, 'there is a reasonable probability' that it 'would change the administrative result.'" *Washington v. Soc. Sec. Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015) (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)). Plaintiff points out that the treatment notes showed that she continued to report pain and receive medication, but that she also reported to her physicians "good relief," improved mobility, and reduced interference with activities of daily living. (Tr. at 66, 68.) This was consistent with the ALJ's findings related to the other pain

management records: *i.e.*, that Plaintiff experienced pain, but that her medications were effective in controlling it, especially as shown by her activities of daily living, which were not substantially impaired. (Tr. at 99-102). Accordingly, there is no evidence in support of Plaintiff's argument that the additional evidence she submitted rendered the ALJ's decision erroneous. *See Ingram*, 496 F.3d at 1262.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Fullerton's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON FEBRUARY 5, 2019.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704